UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **TERRIS, PRAVLIK & MILLIAN, LLP**<br><br>Plaintiff,<br><br>v.<br><br>**CENTERS FOR MEDICARE & MEDICAID SERVICES,**<br><br>Defendant. | Civil Action No. 10-951 (ESH/JMF) |

**MEMORANDUM OPINION**

This case has been referred to me by Judge Huvelle for resolution of <u>Plaintiff's Motion for an Award of Attorneys' Fees and Expenses</u> (Dkt. 17).[1]

**I.  STATEMENT OF FACTS**

Based on the briefing, there is no genuine dispute as to the following material facts:

1.  Plaintiff is the law firm of Terris, Pravlik & Millian ("TPM"), who represents prevailing parties in <u>Salazar v. District of Columbia</u>, 954 F. Supp. 278 (D.D.C. 1996). Dkt. 17 at 1. As part of the Settlement Order in that case, TPM, on behalf of the <u>Salazar</u> plaintiffs, has monitored and enforced the District of Columbia's compliance in carrying out the Settlement Order. <u>Id.</u>

2.  Defendant is the Centers for Medicare and Medicaid Services ("CMS"), under the Department of Health and Human Services ("HHS"). <u>Declaration of Michael S. Marquis</u>

---
[1] After their introduction, briefs will be referenced by docket number.

1

[Dkt. 20-1] ("Marquis Decl.") at ¶ 1. Michael S. Marquis is the Director of the Freedom of Information Group (the FOIA Group), Office of Strategic Operations and Regulatory Affairs, CMS, HHS, and serves as the Records Access Officer for CMS. Id.

3. On October 11, 2005, TPM submitted a request for records to CMS under the Freedom of Information Act, 5 U.S.C. § 552 ("FOIA"). Dkt. 17 at 1-2. The request sought eight categories of records relating to TPM's monitoring of a remedial order in Salazar. Id. at 2. CMS received the request on October 13, 2005. Id. at 2.

4. CMS acknowledged receipt of the request in a letter dated November 9, 2005, and informed TPM of CMS's heavy volume of FOIA requests and CMS's "first in, first out" policy. Marquis Decl. at ¶ 5. Also on November 9, 2005, the CMS FOIA Group referred the request to the Philadelphia regional office for a search for responsive records. Id.

5. On June 28, 2006, Marguerite Clark of CMS contacted TPM to inquire whether TPM was still interested in the records requested in its October 11, 2005 FOIA request; TPM confirmed that it was still interested. Affidavit of Patrick A. Sheldon [Dkt. 17-5] ("Sheldon Aff.") at ¶ 3.

6. On July 14, 2006, Susan Cuerdon, Associate Regional Administrator, Division of Medicaid and Children's Health, sent Marquis a memorandum providing the responsive records found by the Philadelphia regional office. Supplemental Declaration of Michael S. Marquis [Dkt. 24-1] ("Supp. Marquis Decl.") at ¶ 8. The memorandum explained that the office conducted a search for documents, but was unable to locate records in response to items 3, 5, 7, and 8. Id. In response to items 1 and 2 of the request, the office attached the most current strategy plan and revisions dated August 8, 2003, and December 2, 2003.

Id. In response to item 4, the office attached two Notices of Public Interest. Id. In response to item 6, the office attached the Fiscal Year 2004 CMS Form 416. Id.

7. On March 6, 2007, the CMS FOIA Group received a March 2 letter from TPM inquiring about the status of the October 11, 2005 request and restating a request for a waiver of all processing fees. Marquis Decl. at ¶ 6.

8. On June 14, 2007, TPM initiated a phone call with CMS, in which CMS indicated that its responses to FOIA requests were delayed, and that TPM's request would be pulled to see if the agency had the requested records. Dkt. 17 at 2.

9. In January 2008, Rowena Rice, the FOIA analyst originally assigned to TPM's request, retired. Marquis Decl. at ¶ 7. In reviewing the file record, Marquis does not believe Rice took any further action on the request between the time the documents from the Philadelphia regional office were sent to the FOIA Group in 2006 and her retirement in 2008. Supp. Marquis Decl. at ¶ 9. Due to limited staff resources, TPM's request was not reassigned to another FOIA specialist until 2010, when it was assigned to the CMS FOIA Backlog Reduction Task Force. Id. at 10.

10. On May 18, 2009, TPM contacted CMS by telephone, at which time TPM was informed that CMS would need to consult with the FOIA office in Washington, D.C. regarding the October 2005 request and that CMS would contact TPM when that had been done. Dkt. 17 at 2-3. TPM did not receive further contact. Id.

11. In 2010, HHS issued an Open Government Plan, which created a plan to improve FOIA operations at HHS. Marquis Decl. at ¶ 10. Consistent with this effort, CMS created a FOIA Backlog Reduction Task Force whose goal in Fiscal Year 2010 was to close and

finalize 100 requests in the backlog per week to substantially reduce CMS's existing FOIA request backlog. Id.  Over the course of the year, CMS reduced its backlog of requests from 10,312 to 3,486. Id. at ¶¶ 9-10.  TPM's October 11, 2005 request was sent to the FOIA Backlog Reduction Task Force during Fiscal Year 2010 prior to CMS becoming aware of this litigation. Id. at ¶ 11.

12. On June 9, 2010, TPM filed its complaint in this lawsuit. Complaint (Dkt. 1).  TPM served CMS at its Baltimore, Maryland address on June 16, 2010, along with serving the United States Attorney General on June 18, 2010, and the United States Attorney's Office for the District of Columbia on June 14, 2010. Dkt. 17 at 4.

13. Rowena Rice worked as a contractor at CMS as part of the Backlog Reduction Task Force from March 5, 2010 to August 31, 2010. Supp. Marquis Decl. at ¶ 12.  Rice resigned from the task force on August 31, 2010 and no longer works for CMS in any capacity. Id.  Based on a one-page handwritten summary in the request file that, according to Marquis, appears to be in Rice's handwriting, it seems that Rice reviewed the documents, and, in her judgment, deemed the documents releasable. Id. at ¶ 13.

14. On June 29, 2010, Rice called TPM, stating that she was calling to determine whether TPM had a continued interest in its "March 2, 2007 FOIA request." Sheldon Aff. at ¶ 4; Supp. Marquis Decl. at ¶ 13.  Rice stated that a search had been done at some point in time, and that some, but not all, of the requested records were located. Sheldon Aff. at ¶ 6.  Rice had not conducted any additional searches for the request. Supp. Marquis Decl. at ¶ 13.  Attorney Patrick Sheldon indicated to Rice that his office filed litigation on the case

two weeks prior, and suggested that Rice check with her litigation office. Id. Rice stated that she was not aware a complaint had been filed. Sheldon Aff. at ¶ 7.

15. On July 2, 2010, Marquis sent a response letter to TPM, providing the documents that the Philadelphia office had collected in 2006. Supp. Marquis Decl. at ¶ 13. Marquis' letter stated that "[a] search performed by CMS' Philadelphia Regional Office . . . located 174 pages of documents, which are responsive to items 1, 2, 4 and 6 of your request. I am releasing those documents to you in their entirety. However, CMS was unable to locate any records which were responsive to items 3, 5, 7, and 8 of your FOIA request." Defendant's Opposition to Plaintiff's Motion for Attorney's Fees (Dkt. 20), Exh. 5 at 2. The letter also waived processing fees and explained how to appeal the disclosure determination. Id.

16. Also on July 2, 2010, Assistant United States Attorney Alexander Shoaibi filed a Notice of Appearance on behalf of CMS. Notice of Appearance (Dkt. 2).

17. On July 7, 2010, Shoaibi contacted TPM to state that service of process had not been made properly on CMS under 45 C.F.R. § 4.1. Sheldon Aff. at ¶ 9; Dkt. 20 at 6. TPM properly effected service of process on CMS on July 12, 2010. Dkt. 17 at 4.

18. On July 13, 2010, TPM submitted a proposal to Shoaibi, asking for an updated search for records to include records up through June 9, 2010. Supp. Marquis Decl. at ¶ 14. The CMS FOIA Group opened a new FOIA request for the July 13, 2010 request for updated records. Id. The request was referred to the Philadelphia regional office and to an additional office in Baltimore. Id. CMS processed the new FOIA request and conducted searches on an expedited basis. Id. The July 13, 2010 proposal, together with the

5

allegations in the complaint concerning a separate court proceeding involving a pending District of Columbia motion, met one of the accepted circumstances for expedited treatment at CMS, i.e., when the requester needs the specific records in question to meet a deadline in litigation. Id. TPM did not request expedited processing. <u>Plaintiff's Reply Brief in Support of Its Motion for an Award of Attorneys' Fees and Expenses</u> (Dkt. 27) at 12.

19. On August 25, 2010, CMS filed its answer in this action. <u>Answer</u> (Dkt. 9).

20. On July 21 and August 31, 2010, TPM contacted Shoaibi to inquire whether CMS agreed to the July 13, 2010 proposal. Seldon Aff. at ¶ 10. On August 31, 2010, Shoaibi stated that he had not yet heard anything, but would confer with his client. Id. On September 2 and 9, 2010, Shoaibi confirmed that CMS had conducted additional searches, and would need to review the significant number of pages found for responsiveness. Id. at ¶¶ 11-12.

21. On September 15, 2010, the CMS FOIA Group fully released 1,872 pages of records responsive to the new request. Supp. Marquis Decl. at ¶ 14. On October 4, 2010, Shoaibi confirmed that CMS had no additional records responsive to items 1-3 of TPM's October 11, 2005 request for the time period through June 9, 2010. Sheldon Aff. at ¶ 13.

22. On October 15, 2010, the parties filed a praecipe, to which was attached a proposed consent order regarding settlement. <u>Praecipe</u> (Dkt. 12). The consent order was adopted by the Court on October 18, 2010. <u>Consent Order Regarding Settlement</u> (Dkt. 13). The parties were unable to reach an agreement with regard to attorney's fees. Id. at 2.

## II.  PLAINTIFF IS NOT ELIGIBLE FOR A FEE AWARD

As originally enacted, the Freedom of Information Act provided:

> The court may assess against the United States reasonable attorney fees and other litigation costs reasonably incurred in any case under this section in which the complainant has substantially prevailed.

5 U.S.C. § 552(a)(4)(E) (2002).

As amended by the OPEN Government Act of 2007, Pub. L. No. 110-175, 121 Stat. 2524, the pertinent section of FOIA now provides:

> (i) The court may assess against the United States reasonable attorney fees and other litigation costs reasonably incurred in any case under this section in which the complainant has substantially prevailed.
>
> (ii) For purposes of this subparagraph, a complainant has substantially prevailed if the complainant has obtained relief through either--
>
> > (I) a judicial order, or an enforceable written agreement or consent decree; or
> >
> > (II) a voluntary or unilateral change in position by the agency, if the complainant's claim is not insubstantial.

5 U.S.C. § 552(a)(4)(E) (2007).[2]

The court of appeals has explained that the purpose of this amendment was to change the standard for eligibility back to what it was prior to the decision in <u>Buckhannon Board & Care Home, Inc. v. West Virginia Dep't of Health & Human Services</u>, 532 U.S. 598 (2001), which required a FOIA plaintiff to obtain court-ordered relief in order to get attorney's fees. <u>Brayton v. Office of the U.S. Trade Rep.</u>, --- F.3d----, No. 09-5402, 2011 WL 1466337, at *4 (D.C. Cir. April 19, 2011). As a result, a plaintiff may "substantially prevail" even without winning a

---

[2] All references to the United States Code or the Code of Federal Regulations are to the electronic versions that appear in Westlaw or Lexis.

7

judicial decree on the merits of its case. Id. Following the 2007 amendment, "[a]t least four events must occur before the government is liable for attorney's fees under 5 U.S.C. § 552(a)(4)(E)(ii)(II): (1) the plaintiff files a FOIA request with the agency; (2) the agency fails to disclose requested records; (3) the plaintiff sues; and (4) the agency voluntarily or unilaterally changes its position." Judical Watch, Inc. v. Bureau of Land Mgmt., 610 F.3d 747, 749 (D.C. Cir 2010).

Whether a plaintiff has "substantially prevailed" is a question of fact for the District Court, and its determination of eligibility[3] is reversed only if clearly erroneous. See Weisberg v. U.S. Dep't of Justice, 848 F.2d 1265, 1268 (D.C. Cir. 1988), overruled on other grounds, King v. Palmer, 950 F.2d 771 (D.C. Cir. 1991). Unfortunately for TPM, there is no evidence whatsoever that CMS ever changed its position after TPM sued. To the contrary, the only available evidence establishes that the disclosure was the product of the administrative process functioning in its ordinary manner, and that the person responsible for the disclosure of the documents released to TPM on July 2, 2010 was not even aware of the existence of the lawsuit until June 29, 2010, only three days prior to the release. See Statement of Facts ("Facts") at ¶¶ 13-14.

---

[3] "Eligibility" speaks to whether a plaintiff has substantially prevailed and is *sine qua non*. If a plaintiff is deemed eligible, the court has discretion to award the fee or not considering factors such as (1) the benefit to the public, if any, derived from the suit; (2) commercial benefit to the successful plaintiff; (3) the nature of the complainant's interest in the released information; and (4) whether the agency's withholding of the records had a reasonable basis in law. Fund for Constitutional Gov't v. Nat'l Archives & Records Serv., 656 F.2d 856, 873 n.36 (D.C. Cir. (1981); see also Davy v. CIA, 550 F.3d 1155, 1159 (D.C. Cir. 2008) (setting out the four criteria for determining whether a substantially prevailing FOIA litigant is entitled to attorney's fees). Cf. Pub. Law Educ. Inst. v. U.S. Dep't of Justice, 744 F.2d 181, 184 (D.C. Cir. 1984) (finding no reason to consider entitlement, as plaintiff was determined to be ineligible for fee award). Entitlement will be addressed at greater length in section III, infra.

The declarations of Michael S. Marquis, Director of the FOIA Group and the Records Access Officer for CMS, speak directly to whether CMS "made a voluntary change in position as a result of this litigation." Facts at ¶ 1. Marquis explains that the October 11, 2005 request was assigned to a FOIA analyst, Rowena Rice. Facts at ¶ 9. On November 9, 2005, Marquis referred the October 11, 2005 request to the CMS Philadelphia regional office by a letter that is exhibit 1 to his supplemental declaration. Facts at ¶ 4; Supp. Marquis Decl. Exh. 1. On July 14, 2006, Susan Cuerdon, Associate Regional Administrator, Division of Medicaid and Children's Health, provided the records her regional office had found that were responsive to the October 11, 2005 request to Marquis's office. Facts at ¶ 6.

Marquis has reviewed the available file record and believes that Rice took no further action between the time the records from Philadelphia were sent to Marquis's office and her retirement in 2008. Facts at ¶ 9. Another analyst was not assigned to this request, and nothing was done with it until it was assigned to the CMS FOIA Backlog Reduction Task Force[4] that had been created to deal with the CMS backlog of FOIA requests. Facts at ¶ 9. Rice returned to CMS as a contractor on the Backlog Reduction Task Force on March 5, 2010. Facts at ¶ 13. A handwritten summary that Marquis believed to be in Rice's handwriting explains, to Marquis's understanding, that Rice reviewed the documents that CMS received from the Philadelphia office and deemed them to be releasable. Facts at ¶ 13. Rice also left notes regarding her June 29, 2010 telephone call with TPM, which indicated that attorney Patrick Sheldon informed her that his

---

[4] For an explanation of the creation of this Task Force and the reductions it made, see Facts at ¶ 11.

office filed litigation on the case two weeks prior and that she should check with her litigation office. Facts at ¶ 14.

On July 2, 2010, based on TPM's continued interest in the documents, Marquis released to TPM the same records that were provided to the CMS FOIA Group by the Philadelphia office in 2006. Facts at ¶¶ 6, 15.

On July 13, 2010, TPM submitted a proposal to attorney Shoaibi, asking for an updated search for records to include records up to June 9, 2010. Facts at ¶ 18. Shoaibi relayed the request to the CMS FOIA Group, who opened a new FOIA request and referred it to the Philadelphia regional office and an additional office in Baltimore. Facts at ¶ 18. The request was given expedited treatment because the July 13, 2010 proposal, together with the allegations in the complaint concerning a separate court proceeding and a pending District of Columbia motion, met one of the accepted circumstances for expedited treatment at CMS. Facts at ¶ 18. Marquis explained that CMS traditionally provides expedited treatment when the requester needs the specific records in question to meet a deadline in litigation. Facts at ¶ 18; see also Medicare and Medicaid Programs, Freedom of Information (FOI) Guidelines, 55 Fed. Reg. 51342 (Dec. 13, 1990) (setting out requester circumstances that may warrant deviation from the "first-in/first-out" practice for processing requests). Accordingly, on September 15, 2010, Marquis released 1,872 pages of records responsive to the July 13, 2010 request. Facts at ¶ 21.

Marquis thus speaks to why this lawsuit was not the cause of the disclosures made on July 2, 2010 and September 15, 2010, stating:

> Before my office was aware of the above-captioned litigation, the
> FOIA request at issue was sent to the FOIA Backlog Reduction
> Task Force during 2010, because the task force was assisting with

10

> backlogged FOIA requests. Before CMS FOIA staff and the task
> force were aware of the above-captioned lawsuit, a member of the
> FOIA Reduction Task Force attempted on June 29, 2010, to
> contact the requester of the 2005 FOIA request at issue in this
> litigation with the intent of asking the requester whether the
> requester was still interested in receiving a response to its 2005
> FOIA request. If the requester had said, "yes," the requester would
> have received the records that had already been gathered for this
> FOIA request, but were part of CMS's backlog, and would have
> received the same agency response that was sent to the requester on
> July 2, 2010. No redactions were made in the records that were
> released on July 2, 2010. If the requester had asked for updated
> records, given the lateness of the agency's response, CMS would
> have opened a new FOIA request and would have provided the
> requester with the same updated records that were sent to the
> requester on September 15, 2010. Instead, the task force member
> was informed of this lawsuit. It was at that time, the CMS
> Freedom of Information Group and the task force found out about
> this lawsuit.

Marquis Decl. at ¶ 11.

Thus, Marquis denies that he, Rice, or the CMS FOIA Group were even aware of this lawsuit until June 29, 2010, and that by then responsive documents had already been collected by the Philadelphia office in 2006. Facts at ¶¶ 6, 15. Marquis then made those documents available to TPM on July 2, 2010 once he learned, after Rice contacted TPM, that TPM still wanted them. The lawsuit that Rice learned about on the June 29, 2010 call had therefore nothing to do with releasing them three days later. Additionally, the processing of the July 15, 2010 request was done on an expedited basis not because of this lawsuit, but because TPM's need for them for other litigation justified expedited treatment under the CMS's policy and pertinent regulations. Facts at ¶ 18.

Since Marquis has spoken to the precise question and denied that this lawsuit has anything to do with the disclosures, TPM has the burden of providing this Court with reasons to

disbelieve him. That burden is a heavy one. TPM has to establish some good reason for this Court to believe that Marquis has perjured himself to save the government attorney's fees. That is hardly the kind of behavior one expects of federal officials in positions of authority in FOIA cases. Obviously, they have nothing to gain personally from whether or not the government pays attorney's fees to successful FOIA plaintiffs. The fees, after all, are not deducted from their salaries.

Moreover, Rice's assertion that she was not aware of the lawsuit when she called one of TPM's attorneys must be true. If she was aware of the litigation, why would she have called one of the TPM's attorneys to ask if TPM was still interested in the 2005 request? If she was lying, she seemingly would have been making the phone call to disguise that fact that she was aware of the lawsuit, and to give herself a credible claim of ignorance. To attribute such a nefarious scheme to Rice, a retired federal employee working on a contractual basis, sounds like the last scene in an Agatha Christie mystery, where Hercule Poirot assembles the suspects in the drawing room and exposes the true level of the perpetrator's deceit. While that is fun, attributing equal deception to a FOIA government contractor borders on the comical.

Against this, TPM offers some terribly thin gruel. TPM asserts that since Marquis produced the records three days after Rice learned of the lawsuit "it is extremely unlikely that such knowledge did not factor into CMS's subsequent actions." Dkt. 27 at 10. Why? On June 29, 2010 Rice called to see if TPM was still interested in the FOIA request and learned of the lawsuit. Why is it incredible that the records were already collected when she made the call and that she made them available three days later since they had already been collected? If learning of the lawsuit on June 29, 2010 were the catalyst, Rice would have had to make herculean efforts

12

to find and assemble the records for the first time and have them processed in three days. There is no reason to believe that she had such a fierce desire to avoid paying attorney's fees that she produced all of the requested records within a few days after learning of the existence of the lawsuit.

TPM also asserts that CMS's representation that TPM would have received the same response it received on July 2, 2010 absent the lawsuit is untrue because TPM received no response in the period from 2005 to 2010, but got one after it filed suit. Dkt. 27 at 10-11. Marquis, however, explains how the backlog caused the absence of a response in the period between 2005 and 2010, and that it was the systematic reduction of the backlog that led to the 2010 response. TPM gives no reason to disbelieve the explanation of the difference in treatment in responding to the request before and after the reduction in the backlog. Indeed, TPM concedes those efforts. Id. at 10. Since Marquis's explanation for the difference in treatment pre- and post-reduction of the backlog is credible, TPM's attempt to draw from that difference the proposition that Marquis is not telling the truth fails.

Finally, TPM questions CMS's explanation that FOIA requests, including TPM's 2005 request, were handled on a "first in, first out" basis. Dkt. 27 at 4-7. That is a red herring. Whether or not CMS did or did not handle the document request on a purely "first-in/first-out" basis does not bear at all on the truthfulness of Marquis's statements that 1) CMS was not aware of the litigation until Rice called one of TPM's lawyers, and 2) that the same already-collected documents would have been released to TPM shortly after that call regardless of the litigation.

While in two recent opinions the court of appeals has interpreted the 2007 amendment, it has not yet addressed the impact of that amendment on that court's interpretation of the fee

provision in FOIA prior to that amendment. It is clear, however, that under the case law interpreting the original fee provision in FOIA the result would be the same, rendering moot the nice question of whether that case law has been obviated.

Since the seminal decision in Cox v. U.S. Dep't of Justice, 601 F.2d 1 (D.C. Cir. 1979) it has been clear that a *post hoc, ergo propter hoc* analysis will never suffice to establish the necessary causality. Id. at 6. "Instead, the party seeking such fees in the absence of a court order must show that prosecution of the action could reasonably be regarded as necessary to obtain the information." Id.

Delay in the disclosure of information demanded under FOIA may take either of two forms. In the first, the agency resists disclosure on the grounds that the documents are exempt from disclosure but that resistance evaporates when the lawsuit is brought. See, e.g., Fund for Constitutional Gov't v. Nat'l Archives & Records Serv., 656 F.2d 856, 871 (D.C. Cir. 1971) (fees awarded when plaintiff confronted with a forthright and final administrative denial of its FOIA request before it filed suit and when it was quite likely that disclosure would not have been made had the lawsuit not been filed); Church of Scientology of Cal. v. Harris, 653 F.2d 584, 587 (D.C. Cir. 1981) (determining that files were only searched in response to FOIA litigation; 200 files released as compared to six items before suit was filed); Cuneo v. Rumsfield, 553 F.2d 1360, 1365 (D.C. Cir. 1977) (government dropped position it had taken for eight years after the court appointed a special master). Compare Pub. L. Educ. Inst. v. U.S. Dep't of Justice, 744 F.2d 181, 184 (D.C. Cir. 1984) (no entitlement to fees when release occurred in unrelated criminal case and Department of Justice released same documents in FOIA case; causality not shown).

Delay commonly occurs because of the backlog in the processing of FOIA requests that has haunted federal agencies since FOIA was enacted. See Open America v. Watergate Special Prosecution Force, 547 F.2d 605, 612-13 (D.C. Cir. 1976). Sudden acceleration in that process resulting in a disclosure made after a lawsuit is filed might, in a given case, lead a court to conclude that, despite the government's protestation, the filing of the lawsuit was the real reason for that acceleration. See Crooker v. U.S. Dep't of the Treasury, 663 F.2d 140 (D.C. Cir. 1980). Additionally, when the government simply ignores a FOIA request, its disclosure of the information sought once suit is filed will belie its claim that it would have released the documents without the suit. Id. at 142. On the other hand, if the government's assertion for any delay is the slowness of the FOIA process despite its due diligence, disclosure after the lawsuit is filed, even if long delayed, will not in itself justify the award of fees. See Contreras v. U.S. Dep't of Justice, 729 F. Supp. 2d 167, 171 (D.D.C. 2010) (fees disallowed when disclosure results not from suit but in the culmination of delayed administrative processing); Lovell v. U.S. Dep't of Justice, 589 F. Supp. 150, 154 (D.D.C. 1984) (same).

Admittedly, it is hard to describe CMS as exercising due diligence when it appears that the documents, once discovered, were not disclosed to TPM for several years. Nevertheless, it must be recalled that Congress did not enact the fee-shifting provision of FOIA to punish agencies for their slowness in processing FOIA requests, but to reward plaintiffs whose filing of lawsuits alters the government's slowness and brings about disclosure. In a given case, the absence of due diligence may justify the conclusion that the alteration of the government's position and a sudden burst of alacrity in making the disclosure was caused by that lawsuit. In this case there is positive proof that the filing of the lawsuit did not expedite CMS's processing

of the 2005 request. It was the Task Force's actions in reducing the backlog that led to the disclosure of the documents to TPM that had been collected several years before, and that disclosure had literally nothing to do with the filing of this lawsuit.

## III. PLAINTIFF IS NOT ENTITLED TO FEES

As discussed in footnote 3, supra, even if TPM were eligible for fees, it has not established that the court should exercise its discretion and award the fees based on the following pertinent factors: (1) the public benefit derived from the case; (2) the commercial benefit to the complainant; (3) the nature of the complainant's interest in the records sought; and (4) whether the government's withholding had a reasonable basis in law. Since the government never withheld anything, it never had to justify its withholding, so the last factor is irrelevant.

As to the first three, while there is a genuine public benefit in the prosecution of the Salazar suit, there is none in the disclosures made here. There is nothing about the information that would advance public dialogue about a political, social, or economic issue in which there is likely to be community interest or concern. Instead, in 2009 TPM sought the information as potential evidence to rebut claims that the District of Columbia made as part of the District's effort to be relieved of obligations imposed by an order entered pursuant to a settlement. Complaint (Dkt. 1) at ¶¶ 9, 19.[5] See Cotton v. Heyman, 63 F.3d 1115, 1120 (D.C. Cir. 1995) (no public benefit when plaintiff "sought these documents for the sole purpose of facilitating her employment discrimination suit."). Thus, the potential beneficiaries were the members of the

---

[5] "Plaintiff has urgent need for the requested records to enable it to effectively monitor the settlement order and other remedial orders entered in Salazar v. District of Columbia, D.D.C., Civil Action No. 93-452, particularly in light of the District of Columbia's March 18, 2009 motion to terminate the settlement order."

plaintiff class in that case. While treatment of that class of children is a matter of public concern, the information disclosed was not, and was useful solely to rebut a contention that the District was making in a lawsuit where TPM was representing a class. Indeed, if TPM is going to be compensated for its services related to monitoring and enforcing the remedial order (Dkt. 17 at 22), that would be sufficient to reward the good it has done for that class. It is not entitled to additional compensation because it thought it meritorious to get evidence it needed in the representation of its client.

Moreover, TPM seeks more than $58,000 for its services in a case where there was no opposition by CMS to the disclosure, and where it never had to brief any legal issues whatsoever. If there were a public benefit, it surely was an expensive one, and it is hard to insist that the public now pay for it.

## IV. CONCLUSION

Based on the record before me and the undisputed facts, TPM is neither eligible for nor entitled to attorney's fees under 5 U.S.C. § 552(a)(4)(E).

A separate Order accompanies this Memorandum Opinion.

_____
JOHN M. FACCIOLA
UNITED STATES MAGISTRATE JUDGE